# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JASON SWIDERSKI, | : | CIVIL ACTION |
| :--- | :--- | :--- |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 19-2321 |
| | : | |
| JOHN HARMON, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                               **November 8, 2019**

      Jason Swiderski alleges Northampton County, Warden Penchisen of the Northampton County Prison, and a host of prison employees and state actors violated his civil rights in the denial of medical care while the Commonwealth incarcerated him at the Northampton County Prison. He alleges the prison exposed him to toxic black mold in the prison affecting his health and state actors including prison officials acted with deliberate indifference to his medical needs while incarcerated. Defendants answered the amended complaint raising a variety of legal defenses including immunity and failure to exhaust. Mr. Swiderski now seeks appointment of counsel. He has suffered from psychiatric illness placing him in hospitals. We recently stayed his case while he recovered. He raises claims regarding prison officials being deliberatively indifferent to the effects of alleged toxic black mold on his health. He claims other prisoners are equally affected.

      Congress provides "[t]he court may request an attorney to represent any person unable to afford counsel," granting us "'broad discretion' to determine whether appointment of counsel in a civil case would be appropriate."[1] Although Congress in 28 U.S.C. § 1915(e)(1) permits us to appoint counsel in civil rights cases for indigent prisoners, our Court of Appeals emphasizes

"volunteer lawyer time is extremely valuable," and "district courts should not request counsel . . . indiscriminately."[2] "Civil litigants have no constitutional or statutory right to appointed counsel."[3]

Under our Court of Appeals' guidance in *Tabron*, we undertake a two-step inquiry. First, we must consider the merits of the claim, deciding whether it has "arguable merit."[4] If so, we then consider a non-exhaustive list of factors, including (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which the factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) the plaintiff's ability to retain and afford counsel.[5] These same factors apply to first and subsequent requests, regardless of the stage of the case, and we "should consider the *Tabron* guideposts that may be relevant . . . at the time and stage of the litigation that the request is made."[6] Our Court of Appeals cautions "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases."[7]

Accepting as true the allegations in the amended Complaint and the Answer, we cannot yet determine whether Mr. Talbert's claims should proceed to trial.[8] But they will proceed into discovery as Defendants elected to answer. The claims have arguable merit although several legal questions including on immunity, exhaustion, and causation warrant further examination.

We then turn to the *Tabron* factors. Mr. Swiderski appears not to be capable at this stage of presenting his own case. The legal issues are complex as to immunity and personal involvement related to the alleged presence of prison mold. Mr. Swiderski also moved for appointment of a private investigator and laboratory to examine his claims.[9] The fact investigation while not overly extensive may require investigation into the existence of mold, remediation, knowledge, and

causation. While it is possible his claims may involve credibility determinations, we are not near this issue yet. The case may involve expert witnesses. Mr. Swiderski has not detailed efforts to retain counsel, but we are mindful of his asking for counsel before we stayed the case to allow him to recover.[10] At this stage, these factors together weigh in favor of referring Mr. Swiderski's claims to our volunteer panel for a short period to evaluate the claims. We will stay the matter until we can measure the interest.

We grant Mr. Swiderski's Motion for appointment of counsel in the accompanying Order and refer his case to our volunteer panel.

---

[1] *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)).

[2] *Tabron,* 6 F.3d at 157.

[3] *Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019) (citing *Montgomery*, 294 F.3d at 498).

[4] *Houser*, 927 F.2d at 697 (citing *Tabron*, 6 F.3d at 155).

[5] *Id.* (citing *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997); *Tabron*, 6 F.3d at 155-56).

[6] *Id.* at 700.

[7] *Montgomery*, 294 F.3d at 499; *Houser*, 927 F.3d at 700.

[8] *See Board v. Farnham*, 394 F.3d 469 (7th Cir. 2005)(recognizing constitutional right to adequate ventilation); *Nash v. Akinbayo*, No. 18-677, 2019 WL 4393159,*2 (D.Del. Sept. 13, 2019)(dismissed prisoner black mold civil rights claim with leave to amend); *Bradley v. Miller*, No. 14-1698, 2015 WL 6757022, (M.D.Pa. Nov. 5, 2015) (pro se prisoner claims of harm from black mold dismissed for failure to show the mold "jeopardized or potentially jeopardized her health, or caused her cell to be unfit for habitation); *Nickles v. Taylor*, No. 09-313, 2010 WL 1949447, *5 (D.N.J. May 14, 2010)(granted summary judgment to warden based on conclusory allegations of black mold did not show the "minimal civilized measure of life's necessities").

[9] ECF Doc. No. 58. We today denied this motion without prejudice to allow possible counsel to review the claims.

[10] ECF Doc. Nos. 54, 56.