**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON SWIDERSKI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-2321** |
| | : | |
| **JOHN HARMAN,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                     **July 16, 2020**

Northampton County Prison officers, officials, and board members today move to dismiss an incarcerated person's civil rights case against them because he never produced his records responsive to discovery requests during the COVID-19 pandemic affecting his prison's operations but maintaining his case seeking damages for alleged medical issues caused by alleged black mold in his former prison cell. They argue we should dismiss for lack of prosecution. As he has not answered the motion to dismiss or ever explained his failures, we do not know why the incarcerated plaintiff delayed discovery. The Department of Corrections moved him from Northampton County Prison to SCI-Phoenix and then to SCI-Camp Hill in 2020 before the pandemic. We granted him several extensions to produce his unredacted medical records. But we (and undoubtedly the Prison Officials) are aware of reports of necessary steps to mitigate the spread of pandemic in our state prisons. These steps undoubtedly affect an incarcerated person's ability to produce discovery. We appreciate the Defendants would like to limit fees paid to lawyers from taxpayer funds and seek a quick dismissal. But this is too much. Rather than waiting for our review of a summary judgment record now pending, the Prison Officials' counsel moved for dismissal arguing lack of prosecution. Applying the established *Poulis* factors, we deny this reach. Defendants now moved for summary judgment and we will promptly address their arguments consistent with our preference to resolve cases on the merits.

I.      **Jason Swiderski's *pro se* allegations and failure to timely answer discovery.**

On May 28, 2019, Jason Swiderski *pro se* sued several officials and board members for ignoring toxic black mold in his cell at Northampton County Prison where he then resided.[1]  We granted Mr. Swiderski leave to proceed *in forma pauperis* and attached his earlier supplemental complaint as an amended Complaint.[2]

He alleged a toxic black mold growing inside his cell at Northampton County Prison negatively impacted his health.[3]  Though Mr. Swiderski told Prison Officials about the mold, no one attended to it.[4]  Mr. Swiderski filed a medical grievance explaining he had symptoms resembling hypersensitivity pneumonitis[5] due to breathing the mold in every day and alleging prison nurses would not enter his condition into the system.[6]  The next day, Mr. Swiderski requested to see a doctor for his symptoms, noting in the request form he felt "like s*** cause [sic] of the mold [b]lowing in all day."[7]  Three days later, Mr. Swiderski received a "Solutions/Recommendations" slip informing him the medical staff would treat his symptoms because he had filed a sick call but explaining "black mold is not grievable to medical."[8]  On May 29, the same day Mr. Swiderski sued the prison, he filed a grievance complaining he had submitted numerous grievances throughout March, April, and May, including one to the Jail Advisory Board,[9] but had not received a response.[10]  Mr. Swiderski noted in this May 29 grievance he had been seen by medical several times but no one would admit the black mold caused his health issues.[11]  Mr. Swiderski attached a declaration to his amended Complaint explaining his symptoms included blurred vision and difficulty breathing.[12]  Mr. Swiderski alleges one of the prison nurses would not document his symptoms without seeing the mold in his cell but refused to look in his cell because "if they see it Medical . . . can document it and Northampton County doesn't want that."[13]

Mr. Swiderski added Northampton County as a defendant in his amended complaint.[14] Mr. Swiderski also added multiple plaintiffs to his amended Complaint, but we dismissed these additional plaintiffs in our June 10, 2019 Order for failing to sign the Complaint as required by Federal Rule of Civil Procedure 11.[15] We granted these additional plaintiffs leave to move separately to proceed *in forma pauperis* or, alternatively, to pay the filing fees to join Mr. Swiderski's suit,[16] but none of them did. Mr. Swiderski sues the various prison officials from Northampton County Prison under the Eighth Amendment.[17] He requests we enjoin the prison to close the moldy cell blocks and have the mold tested.[18] But Mr. Swiderski no longer faces the risk alleged in his amended Complaint. The Department of Corrections transferred Mr. Swiderski from Northampton County Prison to SCI-Phoenix on January 15, 2020 and then to SCI-Camp Hill by February 24, 2020.[19] He further seeks $6,000,000 in punitive damages and $600,000 in compensatory damages.[20]

The Prison Officials answered Mr. Swiderski's amended Complaint.[21] We ordered both parties to complete discovery by March 27, 2020 and gave Mr. Swiderski until January 17, 2020 to sign the forms the Prison Officials sent him allowing medical providers to access his medical records after learning the Officials had requested these release forms on June 27, 2019 and December 23, 2019 to no avail.[22] We later granted Mr. Swiderski an extension to send in the forms by February 27, 2020 without changing the discovery deadline.[23]

And then Pennsylvania officials began to shut down to mitigate the spread of COVID-19. By mid-March 2020, Mr. Swiderski did not provide the forms on time and the Prison Officials moved for sanctions under Federal Rule of Civil Procedure 37(b).[24] We denied the request for sanctions and moved the discovery deadline to April 30, 2020.[25] Due to the COVID-19 pandemic, we extended the discovery deadline again to May 26, 2020.[26]

On March 13, 2020 (shortly before COVID-19 stay-at-home orders), the Prison Officials sent written discovery requests, including interrogatories and document requests, to Mr. Swiderski.[27] The Prison Officials gave Mr. Swiderski until April 12, 2020 to respond to written recovery but later provided him with an additional thirty days.[28] On April 1, 2020, Mr. Swiderski wrote to the Prison Officials requesting more time to respond because of prison lockdown due to COVID-19.[29] He sent a redacted form of his medical records on the same day, explaining in his letter he did not understand "why any D+A [sic] information is needed along with mental health so [he] redacted it in black."[30] To avoid court intervention, the Prison Officials' counsel granted Mr. Swiderski's request and extended his deadline to respond to written discovery to May 5, 2020.[31] Realizing Mr. Swiderski had not promptly received the correspondence regarding the May 5, 2020 extension, the Prison Officials' counsel gave him an additional fifteen days on top of the May 5 extension to respond to the discovery request.[32]

Mr. Swiderski did not respond to the discovery within the allotted time.[33] Because of his untimeliness and because counsel for the Prison Officials needed his unredacted medical records, the Prison Officials' counsel requested we intervene in the discovery process.[34] We granted the motion to compel Mr. Swiderski to provide his unredacted HIPAA release forms no later than June 1, 2020 and his discovery response no later than June 15, 2020.[35] The Prison Officials' counsel forwarded copies of our Orders to Mr. Swiderski, attaching additional copies of the discovery requests and unredacted HIPAA release forms.[36]

Mr. Swiderski still has not produced the unredacted HIPAA forms, responded to discovery, or otherwise corresponded with the Prison Officials.

**II.     Analysis**

The Prison Officials moved to dismiss Mr. Swiderski's amended Complaint with prejudice because he failed to prosecute under Federal Rule of Civil Procedure 41(b).[37] Mr. Swiderski has not answered.

We have discretion under Rule 41(b) to dismiss actions "if the plaintiff fails to prosecute or comply with these rules or a court order."[38] Dismissing an action with prejudice is appropriate in "cases where there is a clear record of delay or contumacious conduct by the plaintiff"[39] because it "punish[es] parties who fail to comply with orders of the district court . . . [and] 'deter[s] future abuses.'"[40]

A recent case in our Circuit found dismissal appropriate for failure to prosecute when an incarcerated plaintiff did not respond to the defendants' motions to dismiss even after the court directed him to do so.[41] Though the plaintiff alleged he was not receiving his mail, without more, the court found his four months of unresponsiveness demonstrated his intent not to pursue his claims.[42] By comparison, another court denied the defendant's motion to dismiss for failure to prosecute because the incarcerated plaintiff filed affidavits and notices of address changes with the court.[43] The court noted he "attempted to comply with Court Orders and deadlines to the best of his ability despite his continued incarceration and frequent relocations."[44]

### A.     We consider the *Poulis* factors.

The issue is whether Mr. Swiderski's failure to answer discovery warrants dismissal under Rule 41(b). We must consider the relevant factors in weighing his failure to prosecute his present case.[45] In *Poulis v. State Farm Fire & Casualty Co.*, our Court of Appeals outlined six factors we should use when considering whether to exercise our discretion to dismiss a party for failure to prosecute or to comply with court rules.[46] We should evaluate (1) the extent of the party's

personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim.[47]  "No single *Poulis* factor is dispositive"[48] and "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint."[49]  But "[d]ismissal is a harsh remedy and should be resorted to only in extreme cases; the policy of the law is to favor the hearing of a litigant's claim upon the merits."[50]

### 1. The extent of Mr. Swiderski's personal responsibility weighs against dismissing his case.

The first *Poulis* factor directs us to consider the extent of Mr. Swiderski's personal responsibility in failing to provide the HIPAA forms the Prison Officials requested.  Because Mr. Swiderski proceeds *pro se*, he, rather than an attorney, is personally responsible for complying with court orders.[51]  He "must bear the responsibility of pursuing his claim and at a minimum he must be willing to participate in the discovery process."[52]  The Prison Officials contend Mr. Swiderski "refuse[s] to engage in the discovery process even where it is clear he has the ability to reach the Court and defense counsel since the onset of the pandemic."[53]  Because Mr. Swiderski has failed to provide his unredacted HIPPA forms per the Officials' request and our Orders, the Officials argue he "is solely responsible for his failure to prosecute his action."[54]

We do not agree Mr. Swiderski is personally, or solely, responsible for refusing to engage in the discovery process.  The Prison Officials cite *Briscoe* as their basis for arguing Mr. Swiderski is "solely responsible for the progress of his case."[55]  But in *Briscoe* the district court found the incarcerated plaintiff was personally responsible for failing to attend his pretrial conference, and our Court of Appeals vacated, stating:

6

> [T]he District Court should have provided Briscoe with the opportunity to explain his failure to attend the conference, thus gathering a full understanding of the facts. Because it did not, the record was insufficient for the District Court to find that Briscoe was personally responsible for failing to attend the conference.[56]

Although Mr. Swiderski missed several important deadlines, we would be remiss not to recognize the difficulties the COVID-19 pandemic has presented to incarcerated persons litigating civil actions. Mr. Swiderski wrote on April 1, 2020, explaining he just received the Prison Officials' denial of discovery dated February 5, 2020, indicating significant delays in the prison's mail service.[57] He further stated he did not have access to the law library and limited access to his mail because of the COVID-19-related prison lockdown.[58] As the Prison Officials conceded in their Motion, Mr. Swiderski faced delays in receiving his mail at least through the end of April.[59] We agree with the Officials Mr. Swiderski could have made an effort to write to this Court or to the Prison Officials' counsel explaining why he could not timely respond to discovery requests or provide his medical forms.[60] But given the likelihood of ongoing difficulties accessing the law library due to the pandemic, we refrain from finding he is personally responsible for his delayed response until he has had an "opportunity to explain his failure."[61] We find the first *Poulis* factor weighs against dismissing Mr. Swiderski's case.

### 2. Limited possible prejudice to the Prison Officials weighs against dismissing Mr. Swiderski's case.

Under the second *Poulis* factor, we address whether the Prison Officials have been prejudiced by Mr. Swiderski's untimeliness throughout the discovery process. Our Court of Appeals has found "[e]vidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment."[62] Prejudice to defendants includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy"[63] such as "disputes between the parties on discovery matters because the defendants were deprived

7

of necessary information or had to expend costs to obtain court orders for compliance."[64] The Prison Officials argue Mr. Swiderski's uncooperativeness "is prejudicial as it hinders Defendants' ability to conduct additional discovery—including taking Plaintiff's deposition, develop[ing] the factual record, and effectively prepar[ing] for trial."[65] A plaintiff's "failure to litigate this case and comply with court rules and court orders frustrates and delays resolution of this action[] and . . . such failure to litigate can be seen to prejudice the Defendant, who seeks a timely resolution of the case."[66] For instance, a case in our circuit found the second *Poulis* factor weighed in favor of dismissal because without discovery the plaintiff had "been impeded from preparing a summary judgment motion, thereby suffering prejudice."[67]

But here the Prison Officials recently moved for summary judgment.[68] We do not agree Mr. Swiderski's untimeliness and lack of cooperation in the discovery process have been prejudicial. As such, the second *Poulis* factor weighs against dismissing Mr. Swiderski's case.

### 3.  Mr. Swiderski's history of dilatoriness weighs in favor of dismissing his case.

Turning to the third *Poulis* factor, we consider whether Mr. Swiderski has a history of dilatoriness. Extensive or repeated delay such as consistent tardiness in complying with court orders constitutes a history of dilatoriness.[69] Our Court of Appeals has recognized a history of dilatoriness in *Poulis*, where the plaintiff never answered the defendant's interrogatories or filed objections;[70] in *Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins. Co.*, "where the plaintiff repeatedly and strategically delayed and disobeyed court orders;"[71] and in *Bendix Aviation Corp. v. Glass*, "where the case lay dormant for [eleven] years."[72] But our Court of Appeals also instructs we must evaluate "a party's problematic acts . . . in light of its behavior *over the life of the case*."[73]

The Prison Officials contend Mr. Swiderski exhibits a pattern of dilatoriness by requesting stays but continuing to file motions; requesting extensions to obtain his HIPAA forms then failing to provide them; and, failing to respond to the Officials' written discovery despite multiple extensions.[74]

We agree. Mr. Swiderski's numerous delays postponed this case for a matter of weeks or months rather than many years like some of the cases referenced above. But Mr. Swiderski sued the Prison Officials in May 2019 and repeatedly failed to produce his unredacted HIPAA forms since the Officials first requested them in June 2019.[75] Because this lawsuit has been before us just over a year and Mr. Swiderski has failed to produce his medical forms for the better part of that year, we find he has demonstrated a history of dilatoriness "over the life of the case."[76]

### 4. Mr. Swiderski's lack of willfulness or bad faith weighs against dismissing his case.

The fourth *Poulis* factor directs us to evaluate whether Mr. Swiderski's conduct has been willful or in bad faith. "Willfulness involves intentional or self-serving behavior."[77] But conduct which is merely negligent or inadvertent is not grounds for dismissal.[78] In *Briscoe*, our Court of Appeals vacated the district court's finding the plaintiff had acted willfully by missing his pretrial conference because the court had not "provided Briscoe with a full and fair opportunity to present the reasons he did not attend the conference prior to finding that he 'refused' to attend."[79]

Prison Officials argue Mr. Swiderski "demonstrated his ability to correspond with Defendants and This Court despite any restrictions imposed upon him," making it "clear no [] reason for Plaintiff's failure to engage in the discovery process exists other than his willful decisions not to do so."[80]

We disagree. Though Mr. Swiderski has not timely provided his unredacted HIPAA forms or discovery responses, we cannot equate his lack of response to a "willful disregard of his

9

obligation to respond to Defendants' discovery requests."[81] As Mr. Swiderski noted in his April 1, 2020 letter, the prison implemented a lockdown with no access to the law library and limited access to mail at the start of the pandemic. On May 22, 2020, Pennsylvania's Department of Corrections announced its plan to slowly reopen the prison, suggesting Mr. Swiderski was confined in his cell until at least May 22. The May 22 plan illustrates while the prison remains at level 5, its most restrictive level, the law library will be "delivered to housing unit"; when the prison reaches level 4, sixteen incarcerated persons may be in the library at one time; at a level 3, twenty persons; level 2, fifty persons; and the library does not open without limitations until it reaches level 1.[82] With a population of 2,798 as of the date of this Memorandum,[83] it seems likely Mr. Swiderski has had less than satisfactory access to the library over the last several months. Though, as the Prison Officials suggest, Mr. Swiderski could have corresponded with the Officials or with this Court for another extension, we are not convinced "no other reason . . . exists" for his failure to engage in discovery.[84] Until Mr. Swiderski has an "opportunity to present the reasons"[85] for his lack of response, we find the fourth *Poulis* factor weighs against dismissing his case.

### 5. The available alternative review through summary judgment weighs in favor of denying dismissal.

Under the fifth *Poulis* factor, we consider whether sanctions other than dismissal are available. As our Court of Appeals has recognized, "[a] district court must consider the availability of sanctions alternative to dismissal,"[86] such as "monetary sanctions, including fines, costs, or payment of attorneys' fees."[87] The Prison Officials argue other sanctions are not available here[88] as under *Briscoe* "where a plaintiff is proceeding *pro se*, and moreover, is proceeding in forma pauperis . . . monetary sanctions, including attorney's fees, 'would not be an effective alternative.'"[89]

We partially agree with the Prison Officials. Because Mr. Swiderski proceeds *pro se* there is no attorney upon whom we can impose monetary sanctions; if we imposed the sanctions upon Mr. Swiderski, his *in forma pauperis* status tells us he would be unable to make payment.[90] If we were to impose sanctions for Mr. Swiderski's untimeliness as the Prison Officials request, dismissal of his action would be our only option.

But we are also reviewing the Prison Officials' extensive motion for summary judgment seeking the same ultimate relief of dismissal before trial. The Prison Officials' counsel timely moved for summary judgment. We prefer to resolve cases on their merits particularly when the merits are also before us now.

On balance, we find the fourth *Poulis* factor weighs against dismissal.

### 6. The meritoriousness of Mr. Swiderski's claims weighs against dismissing his case.

Under the sixth and final *Poulis* factor we address the meritoriousness of Mr. Swiderski's claim. Our Court of Appeals has found "[a] claim . . . will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff."[91] "The standard of meritoriousness when reviewing a dismissal is moderate"[92] to the extent "in determining whether a plaintiff's claim is meritorious, we use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim."[93] The Prison Officials argue we should dismiss Mr. Swiderski's claim for failure to prosecute because "by not participating in the discovery process, the validity of [his] allegations . . . cannot be ascertained."[94] The Prison Officials suggest the amount Mr. Swiderski is seeking in monetary damages further supports the fact his claims are meritless.[95]

The Prison Officials contradict themselves. If the validity of Mr. Swiderski's allegations cannot be ascertained because has not participated in produced unredacted copies of medical

11

records in discovery, we fail to see how, at this point in the litigation process, the Officials can make assessments about the amount of money he seeks. It is well established "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"[96] When Mr. Swiderski moved to proceed *in forma pauperis*, we screened his Complaint for failure to state a claim under 28 U.S.C. § 1915 and granted his motion because we found he sufficiently pled his allegations.[97] "[T]hese claims surpassed the 12(b)(6) motion to dismiss standard, and under the *Poulis* analysis, his claims are deemed to have merit."[98] We find the final *Poulis* factor weighs against dismissing Mr. Swiderski's amended Complaint.

### B. A balancing of the *Poulis* factors requires we deny the motion to dismiss for failure to prosecute.

Our final step in this inquiry is to decide whether the *Poulis* factors, taken together, direct us to dismiss Mr. Swiderski's case. We find they do not. Although none of the factors is dispositive, considering the current COVID-19 pandemic, Mr. Swiderski's probable lack of personal responsibility and bad faith regarding his failure to prosecute are more significant than his history of dilatoriness. Our finding Mr. Swiderski's claims are facially meritorious subject to summary judgment review and considering "a well-established preference in the Third Circuit to decide cases on the merits"[99] further solidifies our conclusion.

We prefer to resolve the case on its merits. The Prison Officials now movefor summary judgment. We will address the merits through summary judgment. In their motion for summary judgment the Officials raise five main arguments. First, they argue there is no genuine issue of material fact: Mr. Swiderski cannot establish a substantial risk of harm because the Officials took reasonable measures to prevent mold and related illnesses in the facility and he cannot establish deliberate indifference because the Officials inspected his cell on two occasions after receiving his

12

complaints and did not find mold.[100]  Second, Mr. Swiderski cannot establish personal involvement of the Prison Officials because the record does not establish the Officials had actual knowledge about Mr. Swiderski's mold-related health issue or direct supervision over subordinate actors who had such knowledge.[101]  Third, Mr. Swiderski's claims of supervisory *Monell* liability fail because he cannot establish a constitutional violation, and there is no evidence of a constitutionally deficient policy.[102]  Fourth, the Prison Officials are entitled to qualified immunity.[103]  Fifth, Mr. Swiderski cannot demand punitive damages against the Prison Officials because he cannot show the Prison Officials acted with evil intent or with reckless or callous indifference to Mr. Swiderski's medical concerns.[104]

We will address this dispositive motion based on the merits.

## III. Conclusion

The prison-mandated restrictions Mr. Swiderski faces during the pandemic validated several discretionary discovery extensions to provide his unredacted HIPAA forms and discovery responses to Prison Officials.  But we prefer to resolve the case based on a summary judgment record, mindful Mr. Swiderski will be unable to rely on information he has not produced.  We deny without prejudice the Prison Officials' motion to dismiss Mr. Swiderski's case for failure to prosecute.

---

[1] Jason Swiderski sued a variety of Northampton County Prison officials, officers, and Board Members:  Prison Warden David Penchishen, Director of Corrections James Kostura, Prison Chairperson Edward Boscola, Prison Vice Chairperson Michelle Santiago, Prison Board Member Sharon Garretson, Prison Board Member Robin Rivera, Prison Board Member Jodi Ruggiero, Former Prison Chairperson Daniel Hood, Prison Liaison Heffner, Deputy Warden Mark Bartholomew, Hearing Officer Harman, Lieutenant Rinker, Lieutenant Henninger, Lieutenant Warning, Lieutenant Cruz, Lieutenant Hoffman, Lieutenant Cheblowski, Lieutenant Diacogiannis, Captain Collins, Correctional Officer Brandon, Correctional Officer Rehl, Correctional Officer

Jung, and Correctional Officer Pier (collectively "Prison Officials" or "Officials"). ECF Doc. No. 2.

[2] ECF Doc. No. 10.

[3] ECF Doc. No. 11 at 7.

[4] *Id.*

[5] "Hypersensitivity pneumonitis (HP) is a lung disease causing inflammation (swelling and sensitivity) of the lung tissue. This inflammation makes breathing difficult. It can lead to irreversible lung scarring over time. HP results from breathing in specific environmental allergens." CLEVELAND CLINIC, Hypersensitivity Pneumonitis, https://my.clevelandclinic.org/health/diseases/17898-hypersensitivity-pneumonitis, (last visited July 16, 2020).

[6] *Id.* at 32.

[7] *Id.* at 29.

[8] *Id.* at 32.

[9] *See id.* at 51.

[10] *Id.* at 42.

[11] *Id.*

[12] *Id.* at 43.

[13] *Id.*

[14] ECF Doc. No. 11 at 9.

[15] ECF Doc. No. 10 at ¶ 5.

[16] *Id.* at ¶ 6.

[17] ECF Doc. No. 11 at 20-23.

[18] *Id.* at 24.

[19] ECF Doc. Nos. 89, 97.

[20] *Id.*; ECF Doc. No. 112 at 15.

[21] ECF Doc. No. 46.

---

[22] ECF Doc. No. 84 at ¶¶ 2, 4.

[23] ECF Doc. No. 94 at ¶ 1.

[24] ECF Doc. No. 99 at 2.

[25] ECF Doc. No. 103 at ¶ 2(a).

[26] ECF Doc. No. 104 at ¶ 1.

[27] ECF Doc. 112 at 5.

[28] *Id.* at 5-6.

[29] ECF Doc. 112 at 24 (Ex. C).

[30] *Id.* We infer Mr. Swiderski intended D+A to mean DNA.

[31] ECF Doc. No. 112 at 6.

[32] *Id.*

[33] *Id.*

[34] ECF Docs No. 105, 108.

[35] ECF Docs No. 106, 109.

[36] ECF Docs No. 107, 110.

[37] *Id.* at 7.

[38] Fed. R. Civ. P. 4(b).

[39] ECF Doc. No. 112 at 7 (quoting *Burns v. Glick*, 158 F.R.D. 354, 355 (E.D. Pa. 1994)).

[40] *Id.* (quoting *Burns*, 158 F.R.D. at 355-56)).

[41] *Boston v. Cassidy*, No. 18-974, 2018 WL 4698787, at *1 (E.D. Pa. Oct. 1, 2018).

[42] *Id.* at *2.

[43] *Camps v. Nutter*, No. 14-1498, 2017 WL 2779180, at *6 n.2 (E.D. Pa. June 27, 2017).

[44] *Id.*

---

[45] This case is not Mr. Swiderski's first time filing a civil rights case as an incarcerated *pro se* plaintiff. No. 15-6814, ECF Doc. No. 4 at 1-2.

[46] *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

[47] *Id.*

[48] *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).

[49] *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

[50] *Marshall v. Sielaff*, 492 F.2d 917, 918 (3d Cir. 1974).

[51] *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008).

[52] *Richardson v. Cox*, No. Civ. A. 91-7830, 1993 WL 481723, at *3 (E.D. Pa. Nov. 17, 1993).

[53] ECF Doc. No. 112 at 9-10.

[54] *Id.* at 10.

[55] *Id.* at 9 (quoting *Briscoe*, 538 F.3d at 258-59).

[56] *Briscoe*, 538 F.3d at 259.

[57] ECF Doc. No. 112 at 24 (Ex. C).

[58] *Id.*

[59] *Id.* at 6.

[60] *Id.* ("[N]o correspondence from Plaintiff has been received requesting additional time with which to respond due to the COVID pandemic, or any other hardship by Plaintiff.").

[61] *Briscoe*, 538 F.3d at 259.

[62] *Id.* at 259 (quoting *Adams v. Trustees of New Jersey Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 873–74 (3d Cir. 1994)).

[63] *Id.* (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir.2003)).

[64] *Id.*

[65] ECF Doc. No. 112 at 11-12.

[66] *Stewart v. Harry*, No. 18-2315, 2020 WL 3051234, at *2 (M.D. Pa. June 8, 2020).

---

[67] *W. Coast Quartz Corp. v. M.E.C. Tech, Inc.*, No. 16-2280, 2017 WL 1944197, at *2 (D.N.J. May 9, 2017).

[68] ECF Doc. No. 114

[69] *Adams*, 29 F.3d at 874 (citing *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984); then citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (3d Cir. 1990)).

[70] *Poulis*, 747 F.2d at 868.

[71] *Adams*, 29 F.3d at 875 (citing *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683, 683 (3d Cir. 1988)).

[72] *Id.* (citing *Bendix Aviation Corp. v. Glass*, 32 F.R.D. 375, 376 (E.D. Pa. 1961), *aff'd*, 314 F.2d 944 (3d Cir. 1963)).

[73] *Id.* (emphasis added).

[74] ECF Doc. No. 112 at 11-12.

[75] *Id.* at 5.

[76] *Adams*, 29 F.3d at 875.

[77] *Id.*

[78] *Briscoe v. Klaus*, 538 F.3d 252, 262 (3d Cir. 2008) (quoting *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868-69 (3d Cir. 1984)).

[79] *Id.*

[80] ECF Doc. No. 112 at 13.

[81] *Id.*

[82] *COVID-19 Demobilization Plan*, Pennsylvania Department of Corrections, https://www.cor.pa.gov/Documents/PA-DOC-COVID-Demobilization-Plan.pdf (last visited July 16, 2020).

[83] *Daily Population Report*, Pennsylvania Department of Corrections https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited July 16, 2020).

[84] ECF Doc. No. 112 at 13.

[85] *Briscoe v. Klaus*, 538 F.3d 252, 262 (3d Cir. 2008).

---

[86] *Id.* (citing *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 869 (3d Cir. 1984)).

[87] *Id.*

[88] ECF Doc. No. 112 at 14.

[89] *Briscoe*, 538 F.3d at 262-63 (quoting *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002)).

[90] ECF Doc. No. 112 at 14.

[91] *Poulis*, 747 F.2d at 869-70.

[92] *Adams*, 29 F.3d at 876.

[93] *Briscoe*, 538 F.3d at 263 (quoting *Poulis*, 747 F.2d at 869-70)).

[94] ECF Doc. No. 112 at 15.

[95] *Id.* ("Alone, the allegations in the Complaint do not substantiate such a substantial recovery by Plaintiff.").

[96] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[97] ECF Doc. No. 10.

[98] *Briscoe*, 538 F.3d at 263.

[99] *Joe Hand Promotions, Inc. v. Forupk LLC*, No. 19-07970, 2020 WL 1864582, at *1 (D.N.J. Apr. 14, 2020) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984)).

[100] ECF Doc. No. 114 at 7-12.

[101] *Id.* at 14-15.

[102] *Id.* at 15-18.

[103] *Id.* at 18-21.

[104] *Id.* at 21-22.