**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON SWIDERSKI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-2321** |
| | : | |
| **JOHN HARMON,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                          **October 27, 2020**

An incarcerated man alleging toxic black mold in his Northampton County Prison cell and shower facilities must do more than conclude the alleged mold harmed his health. To defeat a motion for summary judgment, he needs to adduce evidence the alleged mold creates a substantial risk of harm rising to the level of deliberate indifference under the Eighth Amendment. After extended discovery, there is a question of fact as to whether the Northampton County Prison exposed the incarcerated man to black mold and the specific nature of his grievances. But there is no evidence of any sort allowing us to infer the black mold created a substantial risk of harm, harmed the incarcerated man, or the state actors did not timely address his grievances. The possible existence of unsanitary conditions is not enough, by itself, to proceed under the Eighth Amendment. Absent genuine issues of material facts as to the absence of these necessary findings, we must grant summary judgment in favor of the state actors and dismiss the incarcerated man's claim.

## I.      Undisputed facts[1]

Jason Swiderski began a six week period of detention in the Northampton County Prison on May 17, 2018.[2] One week later, Mr. Swiderski  began complaining of mold in the shower, on the shower heads, the window, "rotten food out [sic] the cell window, rotten food covered with

mold, wind blows through you can smell it an taste it."[3] In the approximately six weeks of detention, Mr. Swiderski submitted nine grievances and grievance appeals to the Prison, the Prison's medical provider, and the Prison Advisory Board complaining of exposure to black mold on his cell windows, in the trash, in the showers and shower heads.[4] Mr. Swiderski attributed his joint problems, fatigue, and sinus issues to his exposure to mold. The Commonwealth released Mr. Swiderski from the Prison on July 3, 2018 on bail.

Mr. Swiderski began a second year-long period of incarceration at the Prison on February 22, 2019 until his transfer to a state correctional institution on February 20, 2020.[5] Mr. Swiderski began filing multiple grievances and medical requests regarding the alleged toxic black mold outside his cell window, in the showers, and on the shower heads.[6] Mr. Swiderski again claimed his exposure to toxic black mold caused problems with breathing, nasal and vision problems, headaches, stiff neck, and joint pain.

After about three months into his second tenure at the Prison, Mr. Swiderski *pro se* sued the Prison Warden, Deputy Warden, Director of Corrections, and other Prison officials and officers as well as members of the Prison's Advisory Board[7] for violating his civil rights through deliberate indifference to his exposure to toxic black mold in adversely affecting his health under the Eighth Amendment.[8] Around a week later, Mr. Swiderski moved to amend his complaint to sue Northampton County and bring a class action complaint on behalf of other inmates at the Prison.[9] We granted Mr. Swiderski's motion, directed his amended Complaint to be filed, and denied his request for class certification before service of the amended Complaint finding no common issues of fact and law required for certification without prejudice to be renewed following the close of the pleadings as Mr. Swiderski may be inadequate to represent the interests of his fellow inmates

as a person not licensed to practice law in this Court.[10] Mr. Swiderski never renewed his motion for class certification.

### The Northampton County Department of Corrections'
### Sanitation, Maintenance, and Safety Inspection Policy.

Mr. Swiderski's claim is based on a lack of sanitary inspection in the Prison allowing black mold to grow in his cell and shower facilities. The Northampton County Department of Corrections maintains a sanitation, maintenance, and safety inspection policy consistent with Pennsylvania's Department of Labor & Industry regulations and any applicable state and local code inspections.[11] The Department's policy is "to achieve effective and efficient facility sanitation, maintenance, and safety" through "daily, weekly monthly and quarterly" inspections "to maintain conditions that provide for a neat and clean facility while meeting or exceeding the established standards."[12]

Cells, day space, and other areas of each housing unit in the Prison are inspected daily by Corrections Officers who are required to verify cells are "clean and neat, beds are made, and there are no maintenance or security problems" and record daily inspections in the Post Log.[13] Corrections Officers are required to notify shift supervisors or submit an incident report, where applicable, if maintenance is needed.[14] Weekly sanitation, maintenance, and safety inspections of all areas are conducted by shift supervisors who complete a report and submit it to the Public Safety Administrator and the Deputy Warden of Operations each Friday.[15] The Public Safety Administrator and Deputy Warden of Operations conduct random housing and support area inspections weekly to ensure the Department is compliant with all requirements.[16] The Public Safety Administrator, a representative from the medical department, and the Corrections Operations Associate Supervisor conduct "comprehensive and thorough monthly inspections" and a monthly security audit is performed by the Captain of Security and Deputy Warden of Custody and Security.[17]

There is at least one annual inspection by federal, state, and/or local sanitation and health officials.[18] Any violations discovered during the inspections must be corrected immediately.[19] The Director or Warden of a prison is required to conduct weekly/bi-weekly inspections to ensure compliance with all requirements. "Selected Administration" conducts entire facility inspections quarterly, inspecting housing units, support areas, offices, and perimeters.[20] Inmate cells, air vents, bathrooms and fixtures are all required to be cleaned with appropriate sanitation standards.[21]

Cleaning supplies are also made available to inmates to clean and disinfect their cells.[22] The Prison provided Mr. Swiderski cleaning supplies to clean his cell.[23] The Deputy Warden advised Mr. Swiderski in September 2019, "[c]leaning supplies and instructions on how to use them are available on your housing unit to address any potential mold issues. If you suspect a mold issue outside of your window please alert your block officer so he/she may contact the maintenance department to investigate the matter."[24]

### Pennsylvania Department of Corrections' inspection of the Prison.

On September 18, 2018, the Pennsylvania Department of Corrections conducted a standards compliance inspection of the Prison under Pennsylvania regulations.[25] After Department of Corrections' personnel physically inspected the Prison, the inspectors concluded, *inter alia,* the "overall conditions of confinement and quality of life were consistent with [Pennsylvania regulations] requirements. The housing and support areas were clean and maintained in conditions that appeared appropriate for the age of the facility"; "[c]limate conditions, floor space, heating, ventilation, lighting, bathing/toilet areas, and housekeeping in the housing units were observed by the Inspectors during the physical inspection. The housing units were clean, quiet, and orderly. Cell content was minimal and cells were clean. Temperature and airflow appeared to be adequate. Showers were clean and maintained. . . ."; and "[i]nspectors observed conditions during the tour

of the physical plant that showed evidence of compliance with preventive maintenance and routine housekeeping as required by [Pennsylvania regulations]."[26]

The September 18, 2018 inspection revealed one area of non-compliance: the Prison lacked an emergency plan for responding to emergency incidents such as "escape, fire, disturbances, hostage taking, bomb threat, terrorism, biological/chemical incidents, utility outages, natural disasters and evacuation/relocation."[27] The Department of Corrections gave the Prison thirty days to correct the issue.  Inspectors found no other issues.

On October 22, 2018, the Department of Corrections notified the Prison it "achieved full compliance" with Pennsylvania regulations, and because of its achievement, exempted the Northampton County Department of Corrections from the normal one-year inspection cycle until 2020.[28]

### Mr. Swiderski's grievances and complaints about mold.

During his May to July 2018 period of incarceration, Mr. Swiderski filed nine grievances and grievance appeals to the Prison and Prison Advisory Board including after Mr. Swiderski filed his complaint here. Mr. Swiderski's grievances raise a host of issues, such as the denial of a prison job, access to the law library, handling of his legal mail, as well as exposure to mold.[29]

On July 12, 2018, Deputy Warden Mark Bartholomew upheld the denial of Mr. Swiderski's July 2, 2018 grievances. With regard to mold in the shower, Deputy Warden Bartholomew responded, "You are provided the opportunity to shower on a daily basis. . . . Cleaning supplies are also available to all inmates and can be used to maintain cleanliness on the unit and common areas (Showers)."[30]

During his second period of incarceration—February 22, 2019 to February 20, 2020—Mr. Swiderski submitted approximately twenty grievances or appeals to the Prison complaining about exposure to mold.[31] The Prison or its Advisory Board responded to Mr. Swiderski's grievances.[32]

In the September 26, 2019 response, a Prison Grievance Coordinator found Mr. Swiderski's September 14, 2019 grievance "not grievable," explaining "[t]rash is removed several times on a daily basis. Cleaning supplies and instructions on how to use them are available on your housing unit to address any potential mold issues. If you suspect a mold issue outside of your window please alert your block officer so he/she may contact the maintenance department to investigate the matter."[33]

The Jail Advisory Board responded on November 12, 2019 telling Mr. Swiderski: "It is the Boards' [sic] understanding that Mr. Swiderski has pending litigation in matters related to this grievance (reference civil action 19-2321). As such, the Board renders no decision at this time and defers to the decision of the County DOC. The Board may revisit this matter at some future date as deemed necessary and appropriate."[34]

An undated email from Deputy Warden Bartholomew to Jeffrey Mills relayed Mr. Swiderski's complaint about vents in his cell and the window sill between two windows "contain a substance and are dirty"; Mr. Swiderski "claims he cannot clean them"; and requested Mr. Mills "look into this and take appropriate action if necessary so that I can provide Mr. Swiderski a response to his grievance and appropriate action is taken if necessary."[35]

On December 11, 2019, the Prison opened an "Issue, Maintenance and Project Tracking" form recording Mr. Swiderski's complaint of mold on the vents and windowsill in his cell.[36] The next day, December 12, 2019, Mr. Mills inspected Mr. Swiderski's cell and reported: "Cell was

thoroughly checked, no mold or discoloration of any kind found. Pictures were taken and forwarded to [Deputy Warden] Bartholomew."[37]

On December 19, 2019, Mr. Swiderski again complained about mold in the shower and shower heads.[38] On December 23, 2019, the Prison Grievance Coordinator responded to Mr. Swiderski's December 19, 2019 grievance as "not grievable," but advising the mold issue will be "look[ed] into."[39]

The record does not contain any evidence of any further action taken on Mr. Swiderski's grievances, including results of the Grievance Coordinator's December 23, 2019 assurances the mold issue will be "looked into."  The record shows the Prison's Issue, Maintenance and Project tracking system recorded approximately sixteen complaints about mold from May 2018 through December 2019.[40] There is no indication whether Mr. Swiderski or other inmates lodged the complaints. The County and Prison Officials do not challenge Mr. Swiderski's exhaustion of administrative remedies regarding his complaints of exposure to alleged toxic black mold.

### *Mr. Swiderski's medical records.*

In his two periods of incarceration at the Prison, Mr. Swiderski submitted approximately nineteen sick call requests seeking treatment for breathing, sinus issues, itchy and sore throat, and coughing he attributed to exposure to mold.[41]

Mr. Swiderski's Prison medical records show a Prison medical provider examined Mr. Swiderski on his claimed health-related mold issues[42] and prescribed him antihistamine, a cold pack, and antibiotics.[43] Mr. Swiderski sometimes refused the prescribed treatments[44] and frequently refused medical appointments. For example, Mr. Swiderski filed two requests for medical treatment on May 26, 2019; one requesting treatment for his claimed mold-related symptoms (throat, headache, sinuses, stiff neck), and the other asking, "Can I please be seen for

the symptoms I am having due to the black mold. Do not want a cold pack. Feel like s*** cause [sic] of the mold blowing in all day."[45] The medical staff responded Mr. Swiderski "started on a cold pack" treatment on May 24, 2019. Mr. Swiderski then refused the medical appointment scheduled for him in response to his May 26, 2019 requests for a sick call.[46]

In his March 13, 2020 responses to Defendants' Interrogatories, Mr. Swiderski identified his health issues as "chronic rhinitis, severe sinus issues, breathing problems, spots in vision."[47] Mr. Swiderski further responded he suffers from injuries or damages as a result of his exposure, but could not explain the nature of his injuries and continues to receive medical treatment but did not provide dates of treatment or the nature or extent of care he received.[48] Mr. Swiderski responded he intends to call an expert at trial and provided "to counsel" the identity of his expert, substance of the expert's opinion and expert's report.[49] No such information appears in the record.

## II.   Analysis[50]

Defendants move for summary judgment on Mr. Swiderski's conditions of confinement claim.[51] Defendants argue: (1) there is no evidence Prison conditions fell below the constitutional standard; (2) Mr. Swiderski cannot establish the personal involvement of Prison Officials sufficient to hold them individually liable; (3) there is no evidence to support a *Monell* claim against the County; (4) Prison Officials are entitled to qualified immunity; and (5) there is no evidence to support Mr. Swiderski's claim for punitive damages. The Commonwealth released Mr. Swiderski from custody during discovery in this case. He has not appeared in the case since and failed to respond to the summary judgment motion.[52]

To prevail on a conditions of confinement claim under the Eighth Amendment, an inmate must show two elements: (1) the alleged constitutional deprivation "'must be, objectively, sufficiently serious,' resulting in 'the denial of the minimal civilized measure of life's necessities'"

and (2) "a prison official has a 'sufficiently culpable state of mind,' *i.e.*, deliberate indifference to the inmate's health or safety."[53]

The first element requires an inmate to show he is "incarcerated under conditions posing a substantial risk of serious harm."[54] "[T]he proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm."[55] The second element requires deliberate indifference"; a "prison official must both know of and disregard an excessive risk to inmate health or safety. The . . . element of deliberate indifference is subjective, not objective . . .  meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."[56] "In other words, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[57]

An incarcerated person must also show causation. "[I]t is axiomatic that [a] § 1983 action, like its state tort analogs, employs the principles of proximate causation."[58] An inmate must show a "plausible nexus" or "affirmative link"' between the defendant's conduct and the "specific deprivation of constitutional rights at issue."[59] "Although the question of proximate cause must often be submitted to the trier of fact, summary judgment is proper if the record cannot reasonably support a finding of proximate cause . . ."[60]

The Prison and Prison Officials argue Mr. Swiderski cannot not establish a substantial risk of harm as required by the first element; he cannot establish deliberate indifference by Prison Officials required by the second element; and he cannot establish mold caused his alleged medical conditions.

### 1. Mr. Swiderski does not adduce evidence of mold creating a substantial risk of harm.

Because Mr. Swiderski failed to respond to the motion for summary judgment, we have nothing from him showing a genuine issue of material fact his claimed exposure to mold creates a substantial risk of harm. Based on our independent review of over 1,200 pages of medical records, there is no evidence supporting Mr. Swiderski's allegation the County housed him under conditions subjecting him to a substantial risk of harm from exposure to mold.

Throughout his two periods of incarceration at the Prison, Mr. Swiderski complained the presence of "toxic black mold" outside his cell window, in the showers, and on shower heads caused him chronic rhinitis, breathing, sinus and congestion issues, itchy and sore throat, coughing, and fatigue. The record shows the County Department of Corrections maintains a sanitation, maintenance, and safety inspection policy consistent with Pennsylvania's Department of Labor & Industry regulations and requires daily, weekly, monthly, and quarterly inspections.  There is no record of a presence of mold in the Prison.

In September 2018, Pennsylvania's Department of Corrections conducted its yearly inspection and found "areas were clean and maintained in conditions that appeared appropriate for the age of the facility"; "[c]limate conditions, floor space, heating, ventilation, lighting, bathing/toilet areas, and housekeeping in the housing units were observed by the Inspectors during the physical inspection. The housing units were clean, quiet, and orderly. Cell content was minimal and cells were clean. Temperature and airflow appeared to be adequate. Showers were clean and maintained. . . ."; and "[i]nspectors observed conditions during the tour of the physical plant that showed evidence of compliance with preventive maintenance and routine housekeeping as required [Pennsylvania regulations]."[61] In October 2018, after the Prison corrected an area of non-compliance regarding an emergency response plan, the Pennsylvania Department of Corrections

notified the Prison it "achieved full compliance" with Pennsylvania regulations, and because of its achievement, exempted the Northampton County Department of Corrections from the normal one-year inspection cycle until 2020.[62]

In response to Mr. Swiderski's concerns in December 2019, Prison maintenance inspected Mr. Swiderski's cell and reported: "Cell was thoroughly checked, no mold or discoloration of any kind found. Pictures were taken and forwarded to [Deputy Warden] Bartholomew."[63]

While Mr. Swiderski elected not to respond to the summary judgment motion, he attached to his amended Complaint numerous declarations of other incarcerated persons alleging similar facts about the mold under penalty of perjury.[64]  Other courts in our Circuit have recognized:

> While a nonmoving party may not rely on mere allegations in a complaint to create a genuine factual dispute at the summary-judgment stage, where, as here, the complaint is verified, [we] treat[] specific, factual allegations in the complaint that are based on personal knowledge as if they were made in an affidavit or declaration."[65]

We may consider, then, the statements of Mr. Swiderski's colleagues alleging the presence of mold in the cells.  By contrast, the Prison Officials include in their motion for summary judgment several inspection reports commenting on the lack of mold in the cells[66] and dark, blurry photographs seemingly intended as visual proof the cells were mold-free.[67]  The conflicting reports between the incarcerated individuals and the Prison Officials suggests "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[68] We do not agree there is no genuine issue of fact regarding the presence of mold. There is an issue of fact as to whether there is mold.

But even assuming the presence of mold in Mr. Swiderski's cell and the showers, he does not offer evidence there is a "substantial risk of serious harm" from mold exposure. The Eighth Amendment protects inmates not only from conditions of confinement posing a substantial risk of serious harm, but also "an unreasonable risk of serious damage to his future health."[69]

11

Mr. Swiderski complains about symptoms caused by his exposure to mold as well as future harm as a result of mold exposure. He alleges he "has been and will continue to be irreparably injured by the conduct of the defendants" if we do not award injunctive relief by "[t]he shutting down of G-Tier and H-Tier [Prison housing units] till [sic] mold issue is rectified."[70]

There is no evidence in the record Prison conditions posed a substantial risk of serious harm while incarcerated or to his future health. Prison medical records show the medical provider treated Mr. Swiderski, when he kept his appointments, for his complaints of cold-like or allergy-like symptoms. On November 22, 2019, Prison medical providers noted Mr. Swiderski has no history of respiratory problems.[71] On December 10, 2019, the Prison medical provider scheduled an appointment in response to Mr. Swiderski's request for a sick call for treatment of "chronic rhinitis" but Mr. Swiderski refused the appointment.[72] On December 11 and 13, 2019, Prison medical records show Mr. Swiderski did not make any complaints during medical rounds.[73] To the extent Mr. Swiderski complains of harm to his future health, mold does not rise to an unreasonable risk of harm.[74] "[T]he mere presence of mold does not indicate an objectively serious deprivation."[75]

The County and Prison Officials meet their burden on summary judgment to show the undisputed record does not support a conditions of confinement claim based upon the alleged existence of mold. There is no evidence the conditions of his cell or the showers meets the objective prong of the Eighth Amendment test requiring a showing the conditions pose a substantial risk of serious harm.[76]

> ### 2. Even if mold posed a substantial health risk, Mr. Swiderski does not establish Prison Officials acted with deliberate indifference.

We next consider whether the Prison Officials demonstrated deliberate indifference regarding Mr. Swiderski's allegations of the presence of mold in his cell and the showers. "An official is deliberately indifferent if he 'knows of and disregards an excessive risk to inmate health or safety.'"[77] To satisfy the this prong of the Eighth Amendment test, "an inmate must show that the prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"[78] Deliberate indifference is a subjective standard "requiring a showing that prison officials actually knew of and disregarded constitutional violations."[79]

We do not agree with the County and Prison Officials' argument Mr. Swiderski did not tell the Prison Officials about his ailing health.  Mr. Swiderski attached to his amended Complaint a medical grievance he filed on May 25, 2019 where he complained the mold caused his symptoms of hypersensitivity pneumonitis, but the nurses would not enter this information into the system.[80] He sued the prison on May 28, 2019.[81]  Prison Officials attach a March 15, 2019 grievance where Mr. Swiderski wrote about his difficulty breathing, headaches, fatigue, joint pain, sinus and throat issues[82]; an April 8, 2019 grievance complaining of breathing problems and insomnia[83]; and an April 10, 2019 grievance appeal where Mr. Swiderski wrote, "I have not been feeling well due to this."[84] Mr. Swiderski stated outright or strongly implied in each of these grievances his medical issues stemmed from the mold.  We fail to see, then, how Mr. Swiderski's "grievances and/or appeals to the Prison Advisory Board [did] not indicate he was suffering from any medical conditions as a result of his exposure to mold until *after* [he] filed his Complaint" on May 28.[85]

But even though we find Mr. Swiderski provided the Prison Officials with notice of his health issues, we agree the Prison Officials took reasonable measures to remedy the situation.  Mr.

Swiderski admitted in his amended Complaint the medical staff treated him with Claritin and antibiotics.[86] The Prison Staff present evidence regarding access of cleaning supplies to individuals incarcerated at Northampton County Prison[87] and attach the policy directing staff to ensure mandatory cell cleaning is proper and thorough.[88] The policy provides, "[i]ssues that cannot be addressed by daily housekeeping and regular maintenance are addressed by a shift supervisor or IssueTrak System . . . . [which] is used to inform maintenance of an issue that needs to be addressed."[89] Prison Officials also attach several IssueTrak reports and an email requesting inspection of the cells.[90] Maintenance workers completed these requests and noted they did not see mold.[91]

Treating Mr. Swiderski with antibiotics and Claritin, maintaining an ongoing cleaning policy, and addressing Mr. Swiderski's complaints about mold by sending someone to evaluate the cells shows the Prison Officials "responded reasonably to the risk, even if the ultimate harm was not avoided."[92]

There is no evidence of "deliberate indifference" by Prison Officials. The record shows Prison Officials responded to Mr. Swiderski's grievances, inspected his cell in response to his complaints of mold, and medical staff treated him in response to his symptoms he claims resulted from exposure to mold.

### 3.    There is no genuine issue of material fact regarding causation.

Mr. Swiderski must also demonstrate a genuine issue of material fact on causation. The record does not reasonably support a finding of causation.[93]

While toxic mold causing an "inmate to suffer headaches, sinus problems, blurred vision, breathing difficulty, irritated eyes, and fatigue can set forth a viable conditions of confinement claim,"[94] there is no evidence Mr. Swiderski's alleged exposure to mold caused him harm.[95]  We

14

have only Mr. Swiderski's assertions his exposure to mold caused his symptoms. Absent expert testimony, or any evidence, we cannot infer conditions in Mr. Swiderski's cell and the showers caused his symptoms or harm.[96]

There is no evidence creating a genuine issue of material fact on his conditions of confinement claim. Even viewing the facts and drawing all reasonable inferences in the light most favorable to Mr. Swiderski, there are no facts in the record to make a sufficient showing on the essential elements of his claim. Under Federal Rule of Civil Procedure 56, we must enter summary judgment in favor of Defendants.[97]

## III.   Conclusion

We today address a former incarcerated man's claim of black mold and health issues at Northampton County Prison. But we have no demonstrated causation and no basis to find deliberate indifference by state actors. We grant Defendants' motion for summary judgment as there is no genuine issue of material fact on the absence of causation or conduct constituting substantial indifference.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Defendants' filed their Motion for summary judgment and supporting memorandum of law at ECF Doc. No. 114; their SUMF at ECF Doc. No. 114-1; and appendix at ECF Doc. No. 114-2 through 114-36. We denied Defendants' Motion without prejudice to allow Mr. Swiderski additional time to complete discovery. ECF Doc. No. 121. We allowed Defendants to renew their Motion for summary judgment without a Memorandum or repeated exhibits but with supplemented information provided in the final phase of discovery. *Id.* Defendants renewed their Motion for summary judgment at ECF Doc. No. 126 and supplemented the appendix at ECF Doc. No. 126-2 to 126-3. References to the appendix are by Bates number, for example, "1A."

[2] ECF Doc. No. 114-1 at SUMF at ¶ 2.

[3] ECF Doc. No. 114-7 at 84A.

---

[4] ECF Doc. Nos. 114-7 to 114-15 at 84A–95A.

[5] ECF Doc. No. 114-1,  SUMF at ¶ 3.

[6] ECF Doc. No. 11 at 27, 29, 32, 42, 47–52, 55.

[7] Mr. Swiderski sued twenty-three individuals as defendants in their individual and official capacities: Classification Coordinator John Harmon; Director of Corrections James Kostura; Warden David Penchishen; Deputy Warden Mark Bartholomew; Captain David Collins; Lieutenant Luis Cruz; Lieutenant Rachel Henninger; Correctional Officer Wayne Jung; Lieutenant Warning; Lieutenant Michael Cheblowski; Lieutenant Chad Rinker; Lieutenant Justin Hoffman; Lieutenant Diacogiannis; Correctional Officer Pier; Correctional Officer Brandon; Correctional Officer Rehl; Prison Advisory Board Chairperson Daniel Hood; Prison Advisory Board Vice Chairperson Dr. Michelle Santiago; Prison Advisory Board Member Jodi Ruggiero; Prison Board Member Sharon Garretson; Prison Advisory Board Member Robin Rivera; Prison Advisory Board Member Edward Boscola; and Prison Liaison Lori Vargo Heffner ("Prison Officials"). ECF Doc. No. 11.  Mr. Swiderski named Correctional Officer Jung as a defendant in the original Complaint but not the amended Complaint. *Compare* ECF Doc. No. 2 *with* ECF Doc. No. 11.

[8] ECF Doc. Nos. 2.

[9] ECF Doc. No. 8.

[10] ECF Doc. Nos. 10, 11.

[11] ECF Doc. No. 114-3 at 1A–7A;  ECF Doc. No. 114-1, SUMF at ¶¶ 13-25.

[12] ECF Doc. No. 114-3 at 1A.

[13] *Id.* at 2A.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 3A.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 3A–4A; ECF Doc. No. 114-4 at 8A–9A.

[22] ECF Doc. No. 114-1, SUMF at ¶ 26.

[23] *Id.*, SUMF at ¶ 28.

[24] ECF Doc. No. 114-24 at 111A.

[25] ECF Doc. No. 114-6 at 65A–83A. Title 37, Chapter 95 of the Pennsylvania Code, 37 Pa. Code § 95.220 *et seq.*, regulates county correctional institutions.

[26] ECF Doc. No. 114-6 at 70A, 72A, 79A.

[27] *Id.* at 80A–83A.

[28] *Id.* at 65A.

[29] ECF Doc. Nos. 114-7 to 114-15 at 84A–95A.

[30] ECF Doc. No. 114-15 at 95A; *see also* ECF Doc. No. 114-11 at 88A, 114-13 at 90A.

[31] ECF Doc. No. 114-16–114-23 at 96A–110A; ECF Doc. No. 114-25–114-30 at 112A–117A; ECF Doc. No. 114-31 at 124A.

[32] ECF Doc. No. 114-22 at 111A; ECF Doc. No. 114-25 at 114A; ECF Doc. No. 114-32 at 125A.

[33] ECF Doc. No. 114-22 at 111A.

[34] ECF Doc. No. 114-25 at 114A.

[35] ECF Doc. No. 114-29 at 118A.

[36] ECF Doc. No. 114-30 at 119A–123A.

[37] *Id.*

[38] ECF Doc. No. 114-31 at 124A.

[39] ECF Doc. No. 114-32 at 125A.

[40] *Id.* at 126A–130A.

[41] ECF Doc. Nos. 120-4 at 975A (6/25/2018 sick visit request); 120-4 at 936A (3/8/2019 sick visit request); ECF Doc. No. 2 at 44, 47 (4/18/2019, 4/25/2019 sick visit request); 120-3 at 899A, 898A, 894A, 893A, 890A, 889A (5/21/2019, 5/23/2019, 5/26/2019, 5/27/2019, 5/28/2019, 5/31/2019 sick visit requests); 120-3 at 887A, 888A (6/1/2019, 6/2/2019 sick visit requests); 120-3 at 822A, 820A (9/17/2019, 9/18/2019 sick visit requests); 120-3 at 780A (11/22/2019 sick visit request);

120-3 at 771A, 767A, 764A, 763A (12/1/2019, 12/10/2019, 12/14/2019, 12/15/2019 sick visit requests).

[42] ECF Doc. No. 120-2 at 516A.

[43] ECF Doc. No. 120-1 at 328A, 438A; ECF Doc. No. 120-3 at 888A. It is unclear from the record whether medical providers prescribed these medications and treatments for his breathing and sinus issues.

[44] *See e.g.* ECF Doc. No. 120-1 at 408A.

[45] ECF Doc. No. 120-3 at 894A–895A.

[46] ECF Doc. No. 120-2 at 584A.

[47] ECF Doc. No. 126-3 at 1245A.

[48] *Id.* at 1246A.

[49] *Id.* at 1248A.

[50] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[51] ECF Doc. No. 126. Defendants initially moved for summary judgment on July 14, 2020. ECF Doc. No. 114. Mr. Swiderski requested an extension of time describing his commitment to the Prison's Special Observation Unit because of mental health issues. We granted Mr. Swiderski an extension, extending discovery and denying Defendants' pending Motion for summary judgment without prejudice to be renewed after the completion of discovery. Defendants renewed their Motion for summary judgment consistent with our Order.

[52] On July 17, 2020, Mr. Swiderski asked for a ninety to 180-day extension of all dates in our Scheduling Order. ECF Doc. No. 119. We granted Mr. Swiderski's request, in part, extending the date for Mr. Swiderski to execute an authorization for his medical records, extending the discovery deadline, and denying Defendants' pending Motion for summary judgment without prejudice to renew by September 9, 2020, and giving Mr. Swiderski until September 30, 2020 to respond. ECF Doc. No. 121. The County and Prison Officials renewed their Motion for summary judgment on September 9, 2020. ECF Doc. No. 126. Mr. Swiderski has not responded to the Motion for summary judgment.

Mr. Swiderski is no longer incarcerated at the State Correctional Institution at Camp Hill, Pennsylvania. We do not know Mr. Swiderski's present location because he did not provide us or the Clerk of the Court with his new address. Appearing *pro se*, we provided Mr. Swiderski with a Notice of *Pro Se* Guidelines upon filing. ECF Doc. No. 3. The *Pro Se* Guidelines tell Mr. Swiderski: "The Court will send orders or notices filed in your case to you at the address you provided to the Court. It is important to keep the Court and opposing counsel, if any, advised of your current address. Failure to do so could result in Court orders or other information not being timely delivered, which may result in your case being dismissed for failure to prosecute or otherwise affect your legal rights. The Court's local rules require you to file a notice of change of address with the Clerk of Court within fourteen (14) days of an address change. See Local Rule 5.1(b)." *Id.* Mr. Swiderski failed to provide an updated address. If, or when, he returns seeking reconsideration or other relief, he will need to show good cause for his failure to comply with our Local Rules on updating his address.

Even though Mr. Swiderski has elected to not participate further in his case, including failing to respond to a motion for a summary judgment, we consider Defendants' Motion for summary judgment on the merits. Local Rule of Civil Procedure 7.1 provides the non-moving party must oppose a motion for summary judgment within fourteen days after service. Absent a timely response, we may grant the motion as uncontested except as provided under Federal Rule 56. *See* E.D. Pa. Local R. Civ. P. 7.1(c). If a party fails to properly support an assertion of fact or it fails to properly address another party's assertion of fact as required by Rule 56(c), we may: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). We may not, however, grant a motion for summary judgment as unopposed. *Nunez v. Heere*, 438 F.Supp.3d 321, 323-24 (E.D. Pa. 2020). "[A] district court cannot provide by local rule that a motion for summary judgment will be automatically granted when the opposing party fails to respond, because such a rule would violate Fed.R.Civ.P. 56. Even though Rule 56(e) requires a non-moving party to set forth specific facts showing that there is a genuine issue for trial, it is well-settled . . . that this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond." *Id.* at n.3 (quoting *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

[53] *McClure v. Haste*, 820 F. App'x 125 (3d Cir. 2020) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372-73 (3d Cir. 2019)).

[54] *Mammana*, 934 F.3d at 373 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

---

[55] *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)).

[56] *Id.* (quoting *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005)).

[57] *Id.* (quoting *Farmer*, 511 U.S. at 837..

[58] *Warren v. Prime Care Med. Inc.*, 431 F.Supp.3d 565, 578 (E.D. Pa. 2019) (citing *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)).

[59] *Id.*

[60] *Tallman v. Barnegat Bd. of Educ.*, 43 F. App'x 490, 498–99 (3d Cir. 2002).

[61] ECF Doc. No. 114-6 at 70A, 72A, 79A.

[62] *Id.* at 65A.

[63] ECF Doc. No. 114-30 at 119A–123A.

[64] *See* ECF Doc No. 11 at 30 (Ex. 4) ("Between the mold and the trash . . . . [M]y sinuses have been infected, I have day-long headaches, and my vision has become blurry. Along with that my throat is sore daily and my eyes have become covered with crust."); *id.* at 33 (Ex. 7) ("In this cell our window is covered in Black mold and the outside of windows with rotten trash. Mold spores blow in all the time."); *id.* at 35 (Ex. 9) ("You can see spores blow in and threw [sic] the cell. I haven't been able to breathe right since I moved in and was coughing up blood . . . for a couple days,"); *id.* at 36 (Ex. 10) ("I believe [the mold] affect's [sic] my breathing, and messes with my lung functions and asthma."); *id.* at 40 (Ex. 13) ("I looked out the window and it is full of trash and mold. The wind blows in and ever since my eyes [and] throat are sore and I have headaches and sinus is inflamed.").

[65] *Hammonds v. Collins*, No. 12-236, 2016 WL 1592979, at *8 (M.D. Pa. Jan. 4, 2016) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985)), *report and recommendation adopted in part, rejected in part*, No. 12-236, 2016 WL 1621986 (M.D. Pa. Apr. 20, 2016)).

[66] ECF Doc No. 114-35 at 126A–127A.

[67] ECF Doc. No. 114-32 at 120A–123A.

[68] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). *See Miller v. Rodriguez*, No. 16-2744, 2017 WL 5513690, at *4 (D.N.J. Nov. 17, 2017) (finding vague photographs, incorrect security timestamps, and receipts/statements created a genuine dispute).

[69] *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

20

---

[70] ECF Doc. No. 11 at 24 (using the pagination assigned by the CM/ECF docketing system).

[71] ECF Doc. No. 120-3 at 780A.

[72] ECF Doc. No. 120-2 at 657A-658A.

[73] *Id.* at 658A, 660A-661A.

[74] *Williams v. Meisel*, No. 13–4926, 2014 WL 4744561, at *4 (E.D. Pa. Sept. 24, 2014) (mold in showers does not violate the constitutional prohibition of exposure to an unreasonable risk of serious damage to future health) (collecting cases); *also Nickles v. Taylor*, Nos. 09–313, 09–557, 09–679, 09–952, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010) (on summary judgment, conclusory allegations of black mold in the shower, among other complaints, did not show deprivation of "the minimal civilized measure of life's necessities" and plaintiff's failure to present facts suggesting black mold allegedly identified in the shower, "while unpleasant, posed any serious risk to Plaintiff and so its presence cannot support an Eighth Amendment violation") (collecting cases); *Mitchell v. Dodrill,* 696 F.Supp.2d 454, 467 (M.D. Pa. 2010) (on summary judgment, plaintiff inmate failed to show any of the conditions in his cell, including mold, jeopardized or potentially jeopardized his health, or caused the cell to be unfit for habitation).

[75] *Johnson v. Beard*, No. 09–886, 2014 WL 4793905, at *6 (M.D. Pa. Sept. 25, 2014) (collecting cases).

[76] *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Mammana*, 934 F.3d 368 at 373).

[77] *Id.* (quoting *Farmer*, 511 U.S. at 837).

[78] *Id.* at 444 (quoting *Chavarriaga*, 806 F.3d at 229).

[79] *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

[80] ECF Doc No. 11 at 32.

[81] ECF Doc No. 2.

[82] ECF Doc. No. 114-17 at 103A.

[83] ECF Doc. No. 114-18 at 104A.

[84] ECF Doc. No. 114-19 at 105A.

[85] ECF Doc. No. 114 at 7–8.

[86] ECF Doc. No. 11 at 43.

[87] ECF Doc. No. 114-1, SUMF at ¶ 26. Mr. Swiderski also refers to cleaning his cell in his amended Complaint. ECF Doc. No. 11 at 44.

[88] ECF Doc. No. 114-1, SUMF  at ¶ 21.

[89] *Id.* at ¶¶ 22, 23.

[90] ECF Doc. Nos. 114-32 at 119A; 114-35 at 126A–130A.

[91] *Id.*

[92] *Beers-Capitol*, 256 F.3d at  132.  *See also Williams v. Meisel*, No. 13-4926, 2014 WL 4744561, at *4 (E.D. Pa. Sept. 24, 2014) ("Plaintiff's statement that "[t]hey have come and tried to clean [the mold], but that hasn't solved the problem," belies his contention that prison officials have been deliberately indifferent.").

[93] *Tallman*, 43 F. App'x at 499.

[94] *Johnson,* 2014 WL 4793905, at *6 (citing *Forde v. Fischer*, No. 08-5026, 2009 WL 5174650, at *4 (D.N.J. Dec. 16, 2009)).

[95] *Malles v. Lehigh Cnty.*, 639 F.Supp.2d 566, 581 (E.D. Pa. 2009) (no evidence prison officials' action or inaction proximately caused inmates injuries from Methicillin Resistant Staphylococcus Aureus ("MRSA")).

[96] *Edwards v. Northampton Cnty.*, No. 12-5323, 2016 WL 7654661, at *5 (E.D. Pa. Apr. 29, 2016), *aff'd*, 663 F. App'x 132 (3d Cir. 2016) ("Court is unable to infer, absent expert testimony, that the conditions of [plaintiff inmate's] cell caused his MRSA infection") (collecting cases).

[97] Having determined summary judgment must be entered in favor of Defendants on Mr. Swiderski's Eighth Amendment conditions of confinement claim, we need not reach Defendants' remaining arguments there is no evidence Prison Officials individually participated in the alleged constitutional violations; there is no evidence to support a municipal liability claim against the County under a *Monell* theory; qualified immunity applies to the Prison Officials; and there is no evidence to support punitive damages.

We briefly note the record does not support a claim against Prison Officials because there is no evidence of their personal involvement in a deprivation of his constitutional rights. Under *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988), there can no individual liability under 42 U.S.C. §1983 unless there is personal involvement in the alleged constitutional wrongs. "Defendants in civil rights actions 'must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. Sept. 22, 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)). "'Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.' . . .  And a defendant's

knowledge of a risk to health and safety can be proved indirectly by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Thomas*, 948 F.3d at 138 (quoting *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) and *Beers-Capitol*, 256 F.3d at 133). There is no evidence of any personal involvement or actual knowledge by Prison Officials. Mr. Swiderski alleges generally "Defendants acted with subjective deliberate indifference" without any evidence to support such a claim. Accordingly, even if Mr. Swiderski could meet his burden on summary judgment to show a genuine issue of material fact as to his Eighth Amendment claim, he fails to come forward with any evidence of personal involvement of Prison Officials required to hold them liable under Section 1983.

Mr. Swiderski also alleges a claim against the County. He alleges the County is "legally responsible for the overall operation(s) of the [Prison], over all Defendants mentioned herein, and each Department and each institution under its jurisdiction including the [Prison] [sic]." ECF Doc. No. 11 at 10 (using the pagination assigned by the CM/ECF docketing system). As a matter of law, the County cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978)). To hold the County liable, Mr. Swiderski must provide evidence of a County policy or custom causing the constitutional violation he alleges under *Monell*. To succeed on a *Monell* claim against the County under Section 1983, Mr. Swiderski must identify a municipal policy or custom resulting in his alleged constitutional violation. *Monell*, 436 U.S. at 690–92. Mr. Swiderski did not plead a policy or custom in his amended complaint and, although we extended the discovery deadline for Mr. Swiderski at his request, there is no evidence in the record identifying a custom or policy of the County. For this reason, his claim against the County fails.